## MANALE v. HARRIS et al. *
### No. 14351.

Court of Appeal of Louisiana. Orleans.
Jan. 27, 1936.

Guion & Upton, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, St. Clair Adams, of New Orleans, of counsel, for appellee.

WESTERFIELD, Judge.

The plaintiff in this case, John B. Manale, brings this suit against Newton M. Harris, a real estate broker, Fred Stock, a personal surety for Harris, and the Eagle Indemnity Company, Harris' statutory surety, seeking judgment in solido for $1,150. The court, a qua, for some reason which the record does not disclose, entered two separate judgments, one in favor of plaintiff and against the defendants Harris and Stock, in solido, as prayed for, and the other in favor of the Eagle Indemnity Company dismissing plaintiff's suit. The latter judgment, that in favor of the Eagle Indemnity Company, was appealed from and is now before us for consideration.

The case was tried below on an agreed statement of facts substantially to the following effect:

Newton M. Harris, a real estate agent, or broker, in the city of New Orleans, had executed a bond with the Eagle Indemnity Company as surety thereon in conformity with Act 236 of 1920 in the principal sum of $10,000. Harris, on or about the 14th day of July, 1924, in his capacity as real estate agent and acting for an undisclosed principal, accepted an offer of John B. Manale of $3,000 for the purchase of seven lots of ground situated in the city of New Orleans which had been listed with him for

sale and received 10 per cent. of that amount, or $300, as a deposit and part payment of the purchase price, agreeing to deliver the owner's title to the lots in question, in order that it might be examined by Manale's attorney and the sale of the property consummated. But, instead of delivering the owner's title, as agreed, Harris sold the lots to some other person, to whom an act of sale was executed by the owner. Between the date of the agreement to sell the lots to Manale and the time they were sold to the other party, the lots had enhanced from $3,000, the price at which they were sold to Manale, to $4,550. Harris, when demand was made upon him, agreed to pay to Manale the $1,550 as lost profit on the lots together with the deposit of $300, or a total of $1,850 as damages on account of his failure to execute the agreement to sell the property. Six hundred and fifty dollars was paid in cash and two notes of $600 each, both dated April 24, 1925, and maturing 30 and 60 days thereafter, respectively, were issued to Manale by Harris in settlement of the balance. Harris failed to pay either of the notes with the exception of $50 on account of one of them, which was paid on September 3, 1925. On November 14, 1925, the two notes of $600 each were returned to Harris, who then executed twelve notes in favor of Manale in lieu thereof, eleven of which were for the sum of $95.83 and one for $95.87, and each bore 8 per cent. interest, the first payable December 15, 1925, and one each month thereafter. These notes were indorsed by the defendant, Fred Stock, as a surety. Neither Stock nor Harris paid any of the twelve notes, and this suit was brought against all three defendants upon the dishonored notes. All of the transactions between Harris and Manale relative to the acknowledgment of amount of damage due and the settlement thereof were made without the knowledge of the Eagle Indemnity Company.

We are not concerned with anything but the liability, vel non, of the surety company, the Eagle Indemnity Company. Plaintiff's suit as affecting that defendant is based upon section 16 of Act No. 236 of 1920, which requires that real estate agents shall give a bond "conditioned that such person, firm, partnership, association or corporation shall well and truly carry out the objects and purposes for which said agency, office or business shall have been established, and that such person, firm, partnership, association or corporation shall honestly conduct said business and shall pay all damages which

may result from his or their actions as such real estate agents or brokers; and that any one who may have been injured or damaged by said agent or broker by any wrongful act done in the furtherance of said business or by any fraud or misrepresentation by said agent or broker shall have the right to sue for the recovery of such damages before any Court of competent jurisdiction."

A number of defenses have been urged which we will list in the following order:

First. The transaction complained of is not within the scope of section 16 of Act No. 236 of 1920.

Second. The voluntary acceptance by plaintiff of money and promissory notes from Harris, indorsed by Stock, in settlement of Manale's claim, discharged the Eagle Indemnity Company, Harris' surety, because of the provisions of article 3062, R.C.C.

Third. The prolongation of the terms granted to the principal debtor without the consent of the surety company operated a discharge of the latter under article 3063, R.C.C.

Fourth. The action of the creditor, Manale, impaired the right of recourse of the surety company against the debtor and resulted in the discharge of the surety under article 3061, R.C.C.

Fifth. If the surety company be liable at all, the measure of its liability is established by article 2463, R.C.C., and not by the agreement of settlement made by its principal without its knowledge.

We believe the first defense to be unsound. If a real estate agent accepts earnest money from a prospective purchaser of lots listed with him for sale and contracts to sell the property and he thereafter sells it to some one else without the knowledge or consent of the first purchaser, his bad faith and double dealing are obvious. He is guilty of a wrongful act and his surety, under the express terms of the act of 1920, is liable in damages.

The second defense is based upon article 3062, R.C.C., which reads as follows: "The voluntary acceptance on the part of the creditor, of an immovable or any other property, in payment of the principal debt, is a full discharge of the surety, even in case the creditor should be afterwards evicted from the property so accepted."

It is conceded that incorporeal movables, such as promissory notes, are property. City of New Orleans v. Me-

chanics' & Traders' Ins. Co., 30 La.Ann. 876, 31 Am.Rep. 232. It is said, however, that in this case the creditor merely obtained a written recognition of his debt, and the notes, therefore, could not be considered as the acceptance of other property in payment of the debt. Whatever force this argument may have under other conditions, it is not applicable to the facts in this case because the twelve notes received by the plaintiff were indorsed by Fred Stock, who waived the usual advantages of an accommodation indorser and made himself a surety for the payment of the notes. It is true that Stock did not live up to the obligations of a surety, but nevertheless, in obtaining his indorsement, plaintiff virtually received new notes and certainly obtained other property in satisfaction of his debt. As a matter of fact, the compromise transaction, for that is the way we view it, between Manale and Harris seems to us to have been clearly intended as a final settlement of the differences between the parties growing out of the transaction in connection with the deposit of earnest money and to amount to a novation of the original debt. It will be remembered that this suit is not a claim for damages growing out of the wrongful act of the real estate agent Harris, but upon twelve promissory notes executed by Harris and indorsed by Stock, given in settlement and satisfaction for the damages agreed upon as having been caused by the wrongful act. The basis of the present suit is even more remote from the original transaction because the first settlement was had with Harris, when $650 was paid in cash and two notes for $600 each, maturing in sixty days, were made on April 24, 1925, whereas the twelve notes sued on here grew out of a compromise of the original compromise entered into on November 14, 1925, some seven months later, under the terms of which the $1,150 still due, $50 having been paid in the meantime, was split up into twelve notes and the indorsement of Fred Stock to the twelve notes obtained. Incidentally, Stock signed a separate act of suretyship to which was attached an affidavit concerning the amount of property owned by him and its incumbrances. All of these transactions between Harris and Manale and Stock were, as already stated, unknown to the defendant's surety.

We believe the second defense, that based upon article 3062 of the Civil Code, to be sound, and we might add that the third defense, that based upon article 3063 of the Civil Code, to the effect that the prolongation of terms granted the debtor without the consent of the surety, releases the surety, is equally well founded.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (concurring).

I agree with the conclusion reached by my associate and with everything said in his opinion except that I am not at all certain that the first defense raised is unsound. Since the conclusion reached disposes of the suit favorably to the defendant, it is unnecessary that I make an exhaustive study of the first defense to which I have referred. But it seems to me that when a real estate agent, acting as such, accepts an offer on behalf of an owner whom he represents and then also on behalf of the owner agrees to sell the same property to some one else, the loss occasioned to the first prospective purchaser, if there is a loss, is caused by the action of the owner in refusing to carry out the contract which he has made with that prospective purchaser, and is not caused by the action of the real estate broker in his capacity as such.

If the real estate broker is also the agent and attorney in fact of the owner, and if, in that capacity, he refuses to carry out the contract made with the first prospective purchaser, then his refusal is the refusal of the owner, and, in refusing, he is acting on behalf of the owner as the agent and attorney in fact, and not as his real estate agent or broker.

But I have not gone exhaustively into this question because, as I have already said, the conclusion reached is, I am convinced, entirely sound in all other particulars.

I therefore concur in the decree and in all that has been said, except that which is said with reference to the defense numbered 1.